Thank you, Your Honors. Elizabeth Falk with the Federal Public Defender on behalf of Mr. Jordan. In this case, the District Court committed structural error by using a wrong legal standard, an outdated standard, to deny Mr. Jordan's Batson claim. Because the reasons offered by the prosecution for striking African-American juror Gwen Butler were clearly pretextual, the only remedy is a remand for a new trial. This kind of error is never harmless, according to Batson, because it is essential that the jury that sat is non-discriminatory under the Equal Protection Clause to protect both the rights of Mr. Jordan and of future jurors who are going to serve in our district. Because the District Court used the wrong legal standard, de novo review is appropriate, which means this Court needs to look at the whole record, independently of any findings of the District Court, to see what the real reasons were that the prosecutor gave for striking Ms. Butler. So what were the four reasons? Well, what was the wrong legal standard? Your Honor, the District Court employed a standard that required a systemic showing, which was the old standard under Swain v. Alabama. The Court did that at the urging of the prosecutor. The Court asked what the correct standard was, and the prosecutor erroneously said, there has to be a requirement of a systemic showing. In denying the matter at the oral argument at the important point when the trial was commencing, the District Court said, point one, no systemic showing. That was the wrong standard, and therefore, the Court has accorded no deference. What's systemic showing? And frankly, is this what you argue in your brief? This is news to me. We did argue that in the brief, Your Honor. We argued that de novo review applied. Ordinarily, it would be clear error. But Batson does not require a systemic showing. In fact, there's numerous cases from the system. What's systemic showing? Systemic showing means that there would need to be demonstrated a pattern of strikes, which was the old rule. There's no requirement of a pattern now. I acknowledge that. I don't think the District Court said there has to be a pattern, although the pattern helps demonstrate discriminatory purpose. Discriminatory purpose is the key. You have your one African-American who was struck by a prosecutor and one African-American struck by the defense. It's hard to make any pattern out of that, but that doesn't end the Batson inquiry. You still have to make a prima facie showing. I'm not sure I see where the prima facie showing is. Well, actually, once the District Court moves and gets the reasons offered by the prosecutor, the whole prima facie issue is moot on appellate review. Well, then why are you criticizing the standard applied by the District Court? Because, well, because to make sure that this Court understands it, it must undertake a de novo review and not be deferential to the District Court's findings, because we don't know what was in the mind of the District Court when it ultimately denied Mr. Jordan's Batson inquiry. We know exactly what's in the mind. He said it on the record and he issued a written order. He said, among other things, that I noticed her coughing, too. It was going to be distracting. That's a legitimate reason. And why isn't that judged by a clear air standard? Because it's a factual finding. Because it's the de novo review applies when the wrong legal standard is used. And he said there's no problem. That has nothing to do with the legal standard. That has nothing. It's a factual finding. I noticed her coughing. That would be distracting. That's a bona fide reason separate from any discriminatory purpose reason. And we don't dispute that she was coughing. Had that been the only reason offered, this case may not be here. Well, it would be here because you're obliged to bring an appeal, but I'm not sure you'd be using this argument. Well, I agree. But in this case, the prosecutor didn't say at the outset, she's coughing, end of the story. The prosecutor initially responded by pointing to the defense and saying, oh, but they struck an African-American, too. And they did. Yes, but that's not relevant when we are here to try to determine what the prosecutor's intent was with respect to the striking of Ms. Butler. Well, if the argument originally made, and it was, well, this is, I mean, there's another African-American in line, but she's so far back in line that she's not likely to be reached. And the district court acknowledges that. But the argument is, well, it isn't like this is the only African-American in the pool because, in fact, there was somebody else, but that somebody else was knocked out by the defense. So the fact of striking the one African-American who was knocked out by the plaintiff or by the prosecutor is somewhat less compelling when you realize there was somebody else in the pool that the defense decided to knock out. Are we supposed to assume the defense has an equally discriminatory purpose because they happened to knock out one African-American as well? I mean, I think that's the argument being used by the prosecutor. I don't see what's wrong with the argument. It may not be compelling, but it's a legitimate argument. Well, the argument may be considering for a totalitarian circumstances situation, but each strike must be evaluated independently. And the government struck Ms. Butler before the defense struck Mr. Robertson. So what's important to look at is what was in the prosecutor's mind and what were the reasons offered for his strike of Ms. Butler. That's just a way of telling me they didn't deliberately set out to strike every African-American because they left somebody in the pool at the time they made their strike. Well, the pattern of showing is not required. It's evidence. But we're not arguing there's a pattern. We're arguing that if you look at the reasons offered by the prosecutor, it is demonstrated that that strike was pretextual. And regardless of what the defense did, the court cannot look as evidence of what was in the prosecutor's mind with respect to the strike of Ms. Butler. This court cannot look at what the defense did. It's irrelevant as to what is in the mind of the prosecutor. How is the explanation pretextual? I mean, can you focus a little bit on the pretextual? I think their explanation was. Yes. The first reason offered was that they didn't see Ms. Butler raise their hand in response to a question where everybody was expected to raise their hand. That didn't happen. The district court didn't see it happen. The government doesn't respond to that argument on appeal at all. And in the other cases where this court has reversed on the basis of Batson, prosecutors making things up are strong evidence of pretext. The district court doesn't touch it. Is there a finding by the district court it didn't happen? There's a finding that all hands were raised. Is there a finding that it didn't happen, or is there a finding the district court didn't see it happen? I don't recall the district court decided that the prosecutor's professed reason was false. And if there was such a finding, please point me to it. The district court did not find that. That was with respect to nodding off, which is different than the hand raising. Is there a finding by the district court that the prosecutor's reason is false? No, but this court needs to undertake de novo review. So we're supposed to make that determination. We're not sitting in the courtroom. We can't see the hands. I mean, I understand it's an assertion on your part, but you better portray it as an assertion. Don't try to suggest there's a finding by the district court when I didn't see it and you now acknowledge it wasn't there. I never suggested it. Okay. I never said that. We didn't argue that in our case. Are you saying it's fatal somehow to the prosecution that this whole discussion regarding the hand raising? I'm trying to understand what your position is with respect to the prosecutor having a different response than the defense attorney regarding the raising of the hands. How does that affect things? It affects things because in de novo review, every reason stated by the prosecutor has to be evaluated with a sensitive inquiry under the case law. And so it's important that this court both look to what the prosecutor asked other jurors, V. of E. Ms. Butler, undertake a comparative juror analysis, and look to see if something the prosecutor did didn't actually happen. If the prosecutor misstated a juror's testimony in explaining a strike, for example. That was held up in Green v. Lamarck as evidence of pretext. Here, the prosecutor's claiming he saw something that the record indicates did not happen. Where? Where does the record indicate? You're doing it again. You're telling me the record proves something, and I asked you where it was, and you said, well, the district court didn't make such a finding. Where does the record tell me it didn't happen? There's only one question the district court asked where all jurors were expected to raise their hands. Not disputed by the government on appeal at E.R. 929 to 930. The district court indicated all hands were raised. Not all hands were raised but Ms. Butler. All hands were raised. And what did the district court say? That's E.R. 929 to 930. The district court did not address that pretextual reason in either its written order or its oral order. And so if that's the case, are you saying you win based on that? I'm trying to understand to what end you're taking this. I was beginning to explain each of the four reasons offered and why they were pretextual. That's just reason number one. Okay. Reason number two, the scheduling issue that supposedly happened where Ms. Butler was going to cost the court two hours of time. In that instance, the prosecutor didn't have a scheduling issue through the impendency of jury selection with multiple jurors. Suddenly, at the time it's to strike Ms. Butler, he has a problem with scheduling. Well, but at that time she's the only one that was left that presented a scheduling problem. That's true, but it was at the stage where it was anticipated to be deliberations. Not during trial testimony. But wouldn't the prosecutor have an interest in wanting the jury to go ahead and deliberate as soon as possible after their rebuttal closing? It was anticipated at that point it was going to be the second day of deliberations and no more than any other side would have. I mean, you never know what happens during the course of the trial, but it seems to me that the government would have a legitimate interest in a peremptory basis to say, well, I want to make sure there's no scheduling problems so we can get done in time before the judge has closed off the time for this trial to end so that there won't be any unnecessary delay. I mean, what's wrong with that? Well, that kind of interest should have been expressed earlier if that was going to be a problem. Why? Why? Because if that was the real reason, if the prosecutor really had an interest. At that time, there were more people with more scheduling problems. At this point in time, she was the only one with a scheduling problem. So go on to your next one. What's the other one? You only have 30, 40 seconds left. We've used up your time. Keep going. Thank you. The third reason was the coughing. And it is true that Ms. Butler was coughing. It's in the record. The district court did make an inquiry. However, there was another juror seated, a non-African American juror, a Caucasian juror, who was also chronically coughing as indicated in the record. Thank you. I'm sorry. Not to the same degree as Ms. Butler. I mean, as the record shows, Ms. Butler was the one that drew more attention from the judge and some of the other people, and there was a specific record made about Ms. Butler. The other person, if they had a cough, it really wasn't brought out in the record, other than that she had a cough. I agree that the record does indicate the district court inquired as to Ms. Butler's cough, who did indicate that the inquiry was about whether she was sick and contagious. Well, the district court made a pretty clear record with respect to Ms. Butler that he couldn't hear when she was coughing, that he was afraid a juror who might be sitting next to her would really not be able to hear and that it wouldn't be unfair. How do you respond to that? Well, the proper inquiry is what was in the mind of the prosecutor. Indicative is that the prosecutor did not move for cause as a result of her coughing. If he really couldn't hear, that would have been a basis for a cause challenge. That didn't happen. In addition, he didn't. He was really motivated to get rid of a given juror. I mean, he knew she was African American. He was motivated to get rid of her. It seems like he would take up the opportunity to do so via cause. Indeed, he was invited. The district court said at one point he was inclined to excuse this juror because of the scheduling problem. If the prosecutor had a discriminatory motive, why wouldn't he have decided, well, let's take advantage of that and get rid of her right now without even wasting a challenge? Well, I would argue that if that was really what the issue was in the mind of the prosecutor, he would have moved for cause at that time. Why is your version more plausible than mine? Well, you have to look at the totality of the circumstances. It's not just that issue. It's everything else. It's the hand raising. It's the scheduling. It's also in connection with the coughing. The final thing that I want to say is that he did not ask her any questions. Is this typical of the level of coughing that you do? Is there anything else that can be done? Do you think that that's the kind of questioning that usually at the voir dire stage when the individual attorney gets up and is able to talk, if they're really concerned about an issue with the juror and that's legitimate reason they would ask questions about it? Well, the judge was taking that on, the coughing issue. I just don't know how much more the prosecutor could have asked with respect to the coughing. It was pretty evident in the time period that was there how much she coughed. And it looks like this district court judge has a particular sensitivity to coughing, and the prosecutor was aware of that. It sounds like everybody in the northern district who appeared before this judge may be aware of that. Is that not true? I think that's fair to say, yes. But, again, it's what's in the mind of the prosecutor, not the court. I saw something in the record about the judge offering people cough drops if they need it. Did he ever offer this juror a cough drop? He did, and she said she would try them to see if it could control her cough. Did you get them? Do you know? I don't know because I wasn't there. But, again, she never got the opportunity to try because she was struck. The final reason with the nodding off, I'd just like to say about that, that's a very generalized and weak statement under Kessler. Batson requires a clear and specific explanation. That was not seen by the district court. The district court didn't make a finding one way or another. But given the other evidences of pretext, even if one reason, standing alone, would support a Batson challenge, you have to look at the totality and evaluate whether it all demonstrates pretext. And because the other reasons are suspect, that reason should be viewed with suspicion as well. I am over time. I would like to reserve some for rebuttal. We got you there. We will give you a minute for rebuttal. Okay. Thank you. May it please the Court. Suzanne Miles for the United States. The district court here denied defendants' Batson challenge at Step 1 and in the alternative at Step 3. This Court employs clear error standard of review for both of those findings by the district court. And it can affirm on either one of those grounds. The district court did not apply the wrong legal standard. Just said the wrong thing on the record about there had to be some sort of systematic showing of prejudice in the past. Is that the problem? No, Your Honor. Actually, the Court did consider that there was no pattern evidence, but it's permitted to do that. It did not employ the Swain standard. Under Swain, what was required is that the Court look outside the four corners of the case that was in front of it. Under Swain, what was required is the systematic showing over a series of cases, whether this prosecutor or the prosecutor's office over a number of cases had shown a systemic pattern of striking minority jurors. And what Batson held was that that standard was no longer applicable, that the Court could look only within the four corners of the case that was in front of it. Now, in doing so, what the Court held in Batson, what this Court has reaffirmed in Fernandez, is that it's still important to see whether within the four corners of this particular case there may be a pattern of striking minority jurors, whether there's any kind of systemic showing that's relevant. This Court has held that numerous times, and Fernandez is a key case in which this Court talked about that. How is this different from Collins? It's different from Collins in a very key respect. In Collins, the Court actually stopped at finding that there was no pattern, indicating that it deemed that to be a requirement. Here, the Court didn't stop. It kept going. Which indicates that the Court didn't stop. But it made an alternative finding. Well, yes and no, Your Honor. Yes, it did. I think it made an alternative finding. Or tell me why you don't think it was an alternative finding. It did find an alternative. It did make an alternative finding at Step 3. But at Step 1, it didn't stop simply at the pattern requirement. In its written holding, what it said was there was no pattern and no other facts raised an inference of discrimination. What that shows is that the Court did not find pattern evidence to be a threshold requirement. That's at ER 23, Your Honor. Well, but was the prosecutor correct or right? Should the prosecutor have said you need to show a systematic showing? I'm a little troubled by that. I understand. And, no, it's not correct to say that you must find a systemic pattern. That's why it is important to look at what the Court actually did. And what the Court did at ER 23, it's pretty clear, both in citing Fernandez, which does establish the right standard, and in showing that the Court looked both at pattern evidence, finding that there was no pattern, but also indicating the Court looked at the totality of the circumstances, which is the correct standard, finding that no facts, there were no facts on the record to show an inference of discrimination. So that is the correct standard, and that's what was applied at Step 1. Well, the little problem there, I think, is that the discussion, this is at ER 938 to 939, when they were discussing what was required under Batson, the Court then asked if there was anything more to add, and the prosecutor said, oh, Your Honor, I guess just for the record, if I could, I'm sorry, there has to be a systemic pattern of striking with respect to a particular protected group. And then just shortly thereafter, the District Court overruled the Batson claim for two reasons. There is no systemic showing. That is number one. Well, based on what the prosecutor said, based on that response, it's possible to infer from that record that he may have applied the wrong standard. So to respond to that, Your Honor, first of all, you're right, and we don't dispute that what the prosecutor said, at least indicating that that's a requirement, was incorrect. That's true. And the District Court certainly did find that there was no pattern here. But what Collins teaches us, I think, is that we can look at all of the District Court's rulings. And so we cannot throw out the written order that came just a couple of days later at ER 23, which shows that the Court did understand what the standard was. In Collins, we had a very different situation, because the later order did not confirm that the District Court actually understood the standard. But Your Honor is right. We can put the Step 1 analysis aside and move on to Step 3, which is an alternative finding. And there, the District Court didn't mention pattern at all and certainly didn't consider it to be a requirement. The analysis that was done under Step 3 was in conformity with the Batson requirements and the Batson analysis. And the District Court, that decision is reviewed for clear error, and the Court's decision there is supported clearly by the record. At Step 3, the Court considered the government's nondiscriminatory reasons for striking Ms. Butler, the cough, her scheduling conflict, and her apparent inattention, and looked at the totality of the circumstances that was in front of the Court, made a very good record saying that Ms. Butler's cough had distracted the Court on a number of occasions. If her cough was so bad it distracted the Court on a number of occasions, why wasn't she removed before then? Your Honor, I don't know. The Court took her aside at one point, addressed the cough on three different occasions, and asked her whether it was going to persist. She said to him that it's an asthmatic cough, that it gets worse when she's in cold temperatures, and the Court said to her that he keeps his courtroom cold and he was going to continue to do that. So the record does support that this cough was going to continue, and the Court didn't dismiss her for cause. I can't speculate as to why, but we do know that the Court clearly saw that this cough was a distraction and was concerned that it was going to interfere with the proceedings. If he's so concerned about coughing, this particular judge, as you say, or one knows, that would have been a perfect opportunity for her to be gone, wouldn't it? That's correct, Your Honor. But just because this could have been the basis for a forecaused challenge certainly doesn't undermine that it was a valid nondiscriminatory reason for a peremptory strike. Let's look at that sua sponte order of the Court. Yes, Your Honor. The paragraph that I think is probably most significant, it's on page 2 of the order where you say the judge sort of rectifies this. I just want to understand why you're saying that, because in that paragraph, he talks or he discusses Ms. Butler was the only African-American panel member struck by the government out of six strikes. The defense struck the only other African-American individual on the panel who could have made it onto the main jury of 12. Of the six strikes, the government struck four Caucasian individuals, one Asian individual, and Ms. Butler. There was no pattern of exclusion of African-American panel members to create an inference of discrimination. He still focuses on the pattern. He does, Your Honor. It's what comes after that that is illustrative that he understood that this wasn't a prerequisite. And there was no other fact that would give rise to an inference of a discriminatory purpose? That's right. If the pattern was a threshold requirement, he would have stopped there, and he didn't. He went on to review the totality to say that there are no other facts that would give rise to an inference of discriminatory purpose. That's in keeping with what Fernandez holds is the correct standard to apply. You can certainly look at pattern. As Fernandez, Fernandez, the decision in that case was driven by pattern evidence, and it spoke about how important that was. But keep in mind, too, that this is not Swain. I mean, we are talking not about the Swain standard, but about really what is the Swain standard. So for a prima facie case to be made here, you would have needed more than what occurred? Not necessarily. Not necessarily. He says assuming a prima facie was made by the defense, so he's really ruling that there probably wasn't a prima facie case made. And I'm just trying to figure out what more would have been required. I mean, you had a limited number of African Americans on the panel, and the defense struck one, it seems like, for reasons, and I don't know that we need to focus on that. And so the prosecutor struck the only other one that was not the alternate. What you would have needed, Your Honor, is the absence of an obvious reason to strike this juror. It's similar, not dissimilar, to the case in Johnson, which we cited in our briefs, where there was an apparent reason to disqualify a particular juror. Here, we had a record that was replete with instances in which Ms. Butler was coughing to a point of distracting the judge. And I think that's what he gets at, especially here in the second line, where looking at the totality of the facts, is there an inference of discrimination or is there some other obvious nondiscriminatory reason that would have motivated the government to dismiss this juror? And that's, I think, what the Court was looking at. So you incorporate Step 3 into the prima facie analysis? No, because at Step 3, the Court or the government actually verbalized that that's the reason why she was struck. At Step 1, the Court is just looking at the totality of the circumstances to see if there is any other obvious, apparent nondiscriminatory reason that could have allowed this to happen. And here, there were two very apparent nondiscriminatory reasons. Those being the coughing and what else? And the scheduling conflict, Your Honor. The nodding off issue. Not the nodding off. The judge didn't see that. The judge did, however, to answer Judge Clifton's question, clearly find that that reason, along with the others, was made in good faith by the prosecutor. That's at ER 23. It's also at ER, excuse me, 941, where the Court explicitly held that all of the reasons given by the prosecutor were made in good faith. And under Batson, what matters is that the Court believe the prosecutor's nondiscriminatory reason, not that the Court agree with it. And I appreciate that. And I know you're getting out of time here, but I really would like for you to respond. Let's just say that it is, you know, there was a problem with the Parma-Fish ruling. Is it de novo review? And if it is de novo review, can you respond to some of your opposing counsel's points there? Yes, Your Honor. If you find that the wrong legal standard was applied at Step 1, it would be a de novo review of the Step 1 finding. But because there's no showing that the wrong legal standard was applied at Step 3, which is an alternative ruling, you would still apply the clear error standard at Step 3. The Court said nothing about pattern at Step 3, and that holding was clearly made under the correct standard under Batson. So that remains a clear error standard, and this Court can affirm on that ground alone. On the ground of the? The Step 3 analysis. Yes, Your Honor. Thank you. If the Court has no further questions, we'll submit on the brief. Thank you. Ms. Falk. Thank you. So this case is analogous to Collins in response to Judge Murguia's question in that the Orton order does not correct the error that was made at the oral ruling. And once the district court is employing a wrong legal standard and has pattern in its mind, we submit that the de novo review applies to the Step 3 analysis. Because this Court now has the full written record in front of it, has the prosecutor's reasons, and can do an independent evaluation of whether or not those reasons should be believed. Again, I did not hear the government respond to the hand raising. This did not happen. It can't be understood. You tell us it didn't happen. Frankly, the notion that somebody might or might not have noticed whether a hand was raised strikes me as a far too thin reed to put much weight on. The district court did not say the prosecutor made that up. And you're trying to get us to believe that it did. The district court didn't respond at all to that issue. It ignored it. And that's the best you've got. Well, and you'd think that the district court, in looking to see if jurors are going to respond to that question, is everyone in this room able to put aside their views, faithfully apply the Constitution? That's a pretty important question to be looking to see if all the hands are raised. One would expect if someone was not raising their hand, that would be a problem. That was offered by the prosecutor. And because it didn't happen, this court must look at the other reasons offered with suspicion. And that's true in all the cases, particularly the Crittenden case, the Green case, and the Hicks case, in which the court looks to see if the prosecutor is misstating what jurors say or reading things into the record that did not happen. The other issue that the government did not respond to is the prosecutor's lack of questioning as to the coughing. If this were just about coughing, the prosecutor would have said it. I think we have your position and you're well over time.  Thank you. We thank both counsel for the argument. The case just argued is submitted.
judges: Collins, Clifton, Murguia